UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| WADE LEWIS SANFORD,<br><br>       Plaintiff,<br><br>  v.<br><br>NANCY A. BERRYHILL, Deputy Commissioner of Social Security for Operations,<br><br>       Defendant. | CASE NO. C17-5820-MAT<br><br>ORDER RE: SOCIAL SECURITY DISABILITY APPEAL |

Plaintiff Wade Lewis Sanford proceeds through counsel in his appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied Plaintiff's application for Disability Insurance Benefits (DIB) after a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, this matter is REVERSED and REMANDED for further administrative proceedings.

**FACTS AND PROCEDURAL HISTORY**

Plaintiff was born on XXXX, 1964.[1] He has two years of college education, and previously

---

[1] Dates of birth must be redacted to the year. Fed. R. Civ. P. 5.2(a)(2) and LCR 5.2(a)(1).

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL
PAGE - 1

1  worked as a mover/truck driver. (AR 225, 231.)

2  Plaintiff protectively applied for DIB in September 2009. (AR 203-09.) That application
3  was denied initially and upon reconsideration, and Plaintiff timely requested a hearing. (AR 112-
4  14, 117-22.)

5  ALJ Larry Kennedy held hearings in August and December 2011, taking testimony from
6  Plaintiff, a medical expert (ME), and a vocational expert (VE). (AR 48-109.) On January 6, 2012,
7  the ALJ issued a decision finding Plaintiff disabled from October 15, 2007, through July 27, 2010,
8  and not disabled thereafter due to medical improvement. (AR 24-42.) Plaintiff timely appealed.
9  The Appeals Council denied Plaintiff's request for review on February 11, 2013 (AR 1-7), making
10 the ALJ's decision the final decision of the Commissioner.

11 Plaintiff appealed this final decision of the Commissioner to this Court, which reversed the
12 ALJ's decision and remanded to permit the ALJ to reconsider whether Plaintiff's bowel condition
13 improved in July 2010. (AR 874-90.) A different ALJ, Joanne Dantonio, held a hearing in January
14 2015, taking testimony from Plaintiff and a VE. (AR 838-68.) In May 2015, the ALJ again found
15 Plaintiff disabled from October 15, 2007, through July 27, 2010, and not disabled thereafter
16 through his date last insured (DLI) of September 30, 2012. (AR 927-53.)

17 The Appeals Council assumed jurisdiction of the case and affirmed the ALJ's finding in
18 that Plaintiff was disabled from October 15, 2007, though July 27, 2010, but remanded to the ALJ
19 to consider mental impairments and reconsider Plaintiff's residual functional capacity (RFC)
20 during the period he was found not disabled.[2] (AR 963-64.) ALJ Dantonio held another hearing

---

[2] The Appeals Council also indicated that the ALJ should consider a later DLI in light of updated information, but the agency subsequently found that the ALJ should instead continue to use the prior DLI. (AR 963-64, 1163.)

in October 2016, taking testimony from Plaintiff and a VE. (AR 819-37.) On June 30, 2017, the ALJ again found Plaintiff not disabled from July 28, 2010, though September 30, 2012. (AR 787-809.) Plaintiff then requested judicial review. Dkt. 1.

## **JURISDICTION**

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## **DISCUSSION**

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must be determined whether the claimant is gainfully employed. The ALJ found Plaintiff had not engaged in substantial gainful activity during the adjudicated period. (AR 790.) At step two, it must be determined whether a claimant suffers from a severe impairment. The ALJ found severe Plaintiff's lumbar degenerative disc disease, status post fusion; cervical degenerative disc disease/degenerative joint disease; irritable bowel syndrome; and major depressive disorder. (AR 790-91.) Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found that Plaintiff's impairments did not meet or equal the criteria of a listed impairment. (AR 791-93.)

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess RFC and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found that during the adjudicated period, Plaintiff was capable of performing light work with additional limitations: he could lift/carry 20 pounds occasionally and 10 pounds frequently in an eight-hour workday. He could sit, stand, and walk up to four hours each in an eight-hour workday, in 30-minute intervals. He could never crawl, bend, squat, or climb ladders, ropes, or scaffolds. He could occasionally kneel, stoop, crouch, and balance. He could

have no more than frequent exposure to extreme temperatures, vibration, and hazards such as unprotected heights and moving machinery. He required ready access to a bathroom. He could perform simple, routine tasks that required only occasional changes in work tasks. He could perform work that did not require him to exercise judgment on how to perform the work tasks. (AR 793.) With that assessment, the ALJ found Plaintiff unable to perform past relevant work as a furniture mover driver. (AR 807.)

If a claimant demonstrates an inability to perform past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy. With the help of VE testimony, the ALJ found Plaintiff capable of transitioning to other representative occupations, including routing clerk, mail clerk, folder, and production line solderer. (AR 808.)

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff argues the ALJ erred in assessing his RFC, specifically in finding that he could sit, stand, or walk 30 minutes at a time, totaling up to four hours each per workday. The Commissioner argues that the ALJ's decision is supported by substantial evidence and should be affirmed.

/ / /

## RFC

RFC is the most a claimant can do despite limitations and is assessed based on all relevant evidence in the record. 20 C.F.R. § 416.945(a)(1). An RFC must include all of the claimant's functional limitations supported by the record. *See Valentine v. Comm'r of Social Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). The "final responsibility" for decision issues such as an individual's RFC "is reserved to the Commissioner." 20 C.F.R. §§ 416.927(d)(2), 416.946(c); Social Security Ruling (SSR) 96-5p, 1996 WL 374183, at *2 (Jul. 2, 1996). That responsibility includes "translating and incorporating clinical findings into a succinct RFC." *Rounds v. Comm'r of Social Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015) (citing *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008)).

In this case, as mentioned above, the ALJ's RFC assessment indicates that during the adjudicated period, Plaintiff "could sit, stand, and walk up to four hours each in an eight-hour workday, in 30-minute intervals." (AR 793.) Plaintiff argues that this finding is not supported by substantial evidence, and is contrary to credited ME testimony. The Court will first address whether the ALJ's RFC assessment is supported by substantial evidence, namely a State agency opinion, and then turn to consider whether it is inconsistent with the ME testimony.

### State agency opinion

In February 2010, State agency medical consultant Dennis Koukol, M.D., affirmed a Single Decisionmaker's October 2009 opinion that Plaintiff could stand and/or walk for six hours in an eight-hour workday, and sit for six hours in an eight-hour workday. (*See* AR 372, 378, 462.) The ALJ gave significant weight to Dr. Koukol's opinion, but indicated that his RFC assessment was more restrictive than the State agency opinion in order to account for Plaintiff's "testimonies." (AR 802-03.)

1    Plaintiff argues that the State agency opinions cannot constitute substantial evidence to
2 support the ALJ's RFC assessment for two reasons. First, he contends that the opinion of a Single
3 Decisionmaker cannot constitute substantial evidence, even if affirmed by a medical consultant.
4 Dkt. 14 at 5 (citing *Morgan v. Colvin*, 531 Fed. Appx. 793, 794-95 (9th Cir. Jun. 21, 2013)). As
5 an unpublished decision, *Morgan* is at most persuasive authority, and is not persuasive here
6 because Plaintiff overstates its holding and the facts are distinguishable. In *Morgan*, the ALJ
7 erroneously referred to a Single Decisionmaker as a medical doctor and afforded substantial weight
8 to his opinion. 531 Fed. Appx. at 794. The Ninth Circuit held that because Single Decisionmaker's
9 opinion are not entitled to any weight, let alone substantial weight, the case needed to be remanded
10 for the ALJ to correctly apprehend the Single Decisionmaker's credentials. 531 Fed. Appx. at
11 794-95. The Ninth Circuit also went on to find that a medical consultant's affirmance of the Single
12 Decisionmaker's opinion did not render the ALJ's error harmless, because "[w]e cannot know now
13 whether the ALJ would give the same 'substantial weight' to a physician's opinion summarily
14 affirming a non-physician's opinion as she gave to what she mistakenly believed to be a
15 physician's opinion." 531 Fed. Appx. at 795. The *Morgan* court did instruct the ALJ on remand,
16 however, to consider the medical consultant's opinion affirming the Single Decisionmaker's
17 opinion. *Id*.

18    In this case, the ALJ did not refer to the Single Decisionmaker's opinion, but instead
19 referenced only the medical consultant's opinion. (AR 802-03.) Thus, the ALJ here did exactly
20 what the *Morgan* court intended for an ALJ to do, when confronted with a Single Decisionmaker's
21 opinion that is affirmed by a medical consultant. Nothing in *Morgan* suggests that an ALJ errs
22 when relying on a medical consultant's opinion that wholly affirms a Single Decisionmaker's
23 opinion, and thus *Morgan* does not support Plaintiff's argument that Dr. Koukol's opinion cannot

constitute substantial evidence supporting the ALJ's RFC assessment. This challenge therefore fails.

Plaintiff goes on to argue that the ALJ erred in crediting the State agency opinion because both Dr. Koukol and the Single Decisionmaker wrote their opinions at a time when Plaintiff was found to be disabled (according to an ALJ decision written afterward). Dkt. 14 at 5-6. According to Plaintiff, the ALJ could not rely on Dr. Koukol's opinion as it pertains to the adjudicated period. *Id.*

This second argument also lacks merit. The ALJ considered Dr. Koukol's opinion in the context of the entire record, and explained that although he gave significant weight to Dr. Koukol's opinion, he found Plaintiff to be more restricted than Dr. Koukol indicated, in light of other evidence. (AR 803.) It is the ALJ who is tasked with assessing a claimant's RFC in light of the entire record, and Plaintiff has not shown that the ALJ erred in considering Dr. Koukol's opinion along with the remainder of the record when assessing Plaintiff's RFC.

ME testimony

Plaintiff next argues that the ALJ's RFC assessment is inconsistent with the ME's testimony regarding his limitations, and because the ALJ purported to give significant weight to the ME's testimony, either the ALJ's RFC assessment is erroneous or the ALJ erred in failing to explain why the ME's testimony was not fully adopted. *See* SSR 96-8p, 1996 WL 374184, at *7 (Jul. 2, 1996) ("If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.").

The ME's testimony is not a model of specificity. The ME stated that Plaintiff would have been limited to lifting 10 pounds or less "on a regular basis[.]" (AR 96.) The ME indicated that Plaintiff "[m]ight be able to occasionally lift 20 (pounds), up to waist level (INAUDIBLE) a third

of the day.  Now, he could do it a full third of the day . . . No, he, he'd be on the sedentary category."[3]  (*Id.*)

When asked about Plaintiff's limitations as to standing, sitting, and walking, the ME testified that he would have some limitations that would depend on his ability to "tolerat[e] strain on [his] back."  (*Id.*)  The ME testified that Plaintiff's ability to work also depended on the severity of his bowel condition, which was outside the area of his expertise, but that if his bowel condition "is not a big factor in his life anymore, that would be – mean he could do sedentary work."  (AR 98.)  The ME suggested that as long as Plaintiff's bowel condition required him to run "to the bathroom several times a day, that added to his back trouble would put him in the listing category" for Listing 1.04 (spine disorders).  (AR 97.)

The ME's testimony that Plaintiff could perform sedentary work is inconsistent with the ALJ's RFC assessment, because the ALJ indicated that Plaintiff could sit, stand, and walk for four hours each per workday. (AR 793.)  Sedentary work is defined to require less standing and walking than is included in the ALJ's RFC assessment.  *See, e.g.*, SSR 83-10 (Jan. 1, 1983) ("[A]t the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday.").  The ME testified that he was familiar with the Commissioner's regulations (AR 91), and there is no reason to assume that the ME was using a different definition of "sedentary."  Because the ME's testimony was not entirely consistent with the ALJ's RFC assessment, the ALJ erred in failing to provide either a sufficient reason to discount the ME's

---

[3] The Commissioner interprets this portion of the ME's testimony to imply that Plaintiff could perform light work (Dkt. 15 at 5-6), but that is true only as to the lifting requirements of light work.  The ME never testified that Plaintiff could perform the standing/walking requirements of light work, and instead suggested that he could *not*, as discussed *infra*.

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL
PAGE - 8

testimony or in failing to accommodate the ME's testimony in the RFC assessment.

This error should be remedied by a remand for further proceedings, because it is not clear that even if the ME's testimony were credited as true, a finding of disability would necessarily follow. (*See, e.g.*, AR 41 (a prior ALJ decision identifying sedentary jobs Plaintiff could perform, relying on the same ME testimony).) Moreover, the limitations outlined in the State agency opinion were less restrictive than the ALJ's RFC assessment, and conflict with the ME's testimony, and conflicts in the record suggest that further proceedings would not be useless. *See Treichler v. Comm'r of Social Sec. Admin.*, 775 F.3d at 1101, 1105 (9th Cir. 2014). Under these circumstances, a remand for a finding of disability would be inappropriate.

## **CONCLUSION**

For the reasons set forth above, this matter is REVERSED and REMANDED for further administrative proceedings. On remand, the ALJ shall reconsider the ME's testimony and either credit it, or provide legally sufficient reasons to discount it.

DATED this 27th day of June, 2018.

Mary Alice Theiler
United States Magistrate Judge